**STATE of Tennessee, Plaintiff–Appellee,**

v.

**Wayne Lee YEARGAN, Defendant–Appellant.**

Supreme Court of Tennessee,
at Nashville.

Nov. 24, 1997.

John Knox Walkup, Attorney General & Reporter, Daryl J. Brand, Senior Counsel, Clinton J. Morgan, Counsel for the State, Kimbra R. Spann, Assistant Attorney General, Nashville, C. Michael Layne, District Attorney General, Kenneth Shelton, Assistant District Attorney General, Manchester, for Plaintiff–Appellee.

Donald E. Dawson, Bruce, Weathers, Corley, Dughman and Lyle, Nashville, for Defendant–Appellant.

## OPINION

DROWOTA, Justice.

The certified question of law [1] presented in this appeal is whether the state or federal constitutional right to be free from unreasonable seizures was violated when the motor vehicle which the defendant was operating was stopped by a city police officer, who six months earlier, had arrested the defendant for driving under the influence of an intoxicant and had been present in court when the defendant was convicted of that offense and his driver's license revoked for one year.

The trial court denied the defendant's motion to suppress the evidence of the defendant's intoxication obtained during the stop, and the Court of Criminal Appeals affirmed the trial court's decision. Because we conclude that the officer's decision to stop was based upon reasonable suspicion supported by specific and articulable facts that the defendant was driving on a revoked license, the judgment of the Court of Criminal Appeals is affirmed.[2]

## FACTUAL BACKGROUND

On Thursday, January 28, 1993, at approximately 2:20 p.m., Tullahoma Police Officer Jason Ferrell observed the defendant, Wayne Lee Yeargan, driving a pickup truck on a public street in Tullahoma. Previously,

---

1. Rule 37(b)(2)(i), Tenn. R.Crim. P., provides in pertinent part as follows:

    (b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case....

2. Oral arguments were heard in this case in Cookeville, Putnam County, as part of this Court's S.C.A.L.E.S. (Supreme Court Advancing Legal Education for Students) project.

Officer Ferrell had arrested the defendant for driving under the influence of an intoxicant and had been present in the general sessions court approximately six months earlier, on July 2, 1992, when the defendant pleaded guilty to the offense and had his driver's license revoked for one year from the date of the judgment.[3]

When the officer began following the defendant's truck, Yeargan, according to the officer's testimony, "sped up some, he wasn't going at a high rate of speed, but he accelerated." In the officer's view, Yeargan "attempted to put some traffic between us." The defendant then drove into the parking lot of Ruby's Lounge, a local bar. The officer followed and put on his blue lights. The defendant parked and got out of his truck. The officer asked to see his driver's license. Yeargan produced a restricted license issued pursuant to a court order which permitted him to drive "in Coffee County only as necessary to complete job tasks" between the hours of 7 a.m. and 7 p.m. The defendant's employment was listed on the order granting the restricted license as farming and "rental property owner." The officer testified that when he asked Yeargan why he had driven to the bar, the defendant replied that he "had come to the bar to meet a guy about a cow." Based on his observations and a field sobriety test, the officer concluded that the defendant was under the influence of an intoxicant and arrested him for driving under the influence and driving on a revoked license.

The defendant moved to suppress the evidence obtained as a result of the stop, arguing that the officer did not have reasonable suspicion to believe a crime had been committed when he made the stop because the officer knew of the procedure for obtaining a restricted license and had no reason to believe that the defendant was operating outside the scope of his driving privilege. Testi-

fying at the suppression hearing, the police officer acknowledged that he was aware of the availability of restricted licenses for driving offenders. However, the officer testified it would have taken about 15 minutes for the police radio operator to determine the status of the defendant's license before the stop.

Upon consideration of the proof, the trial court denied the defendant's motion to suppress. Thereafter, the defendant pleaded guilty to driving under the influence of an intoxicant, second offense,[4] and driving a motor vehicle with a revoked driver's license,[5] but reserved the right to appeal a certified question of law challenging the constitutionality[6] of the traffic stop leading to his arrest and subsequent convictions. The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress, finding that "a prudent officer could reasonably have believed that the appellant was driving on a revoked license" and holding that the officer had "probable cause to conduct an investigative stop." In reaching that conclusion, the Court of Criminal Appeals relied upon *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *State v. Watkins*, 827 S.W.2d 293 (Tenn.1992). Thereafter, we granted the defendant permission to appeal and for the reasons that follow, now affirm the decision of the trial court and Court of Criminal Appeals.

### STANDARD OF REVIEW

■ This Court recently clarified the standard of review under which a trial court's findings of fact on suppression issues are to be reviewed:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the

---

**3.** The defendant was also fined $250 and sentenced to 11 months and 29 days in jail, which was suspended upon service of the 48 hour mandatory period of incarceration.

**4.** Tenn.Code Ann. § 55–10–401 (1993).

**5.** Tenn.Code Ann. § 55–50–504 (1993).

**6.** We are aware that Tenn.Code Ann. § 40–7–103(b) (Supp.1996), provides that unless proba-

ble cause exists, only members of the Tennessee highway patrol have the authority to stop a motor vehicle for the sole purpose of examining or checking the operator license of the driver of the vehicle. However, since the defendant did not reserve for appeal the statutory legality of the stop, the effect of that statute is not at issue in this appeal.

trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. We also note that this standard of review is consistent with Tenn. R.App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise." Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard.

*State v. Odom,* 928 S.W.2d 18, 23 (Tenn. 1996). The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo. *Beare Co. v. Tennessee Dept. of Revenue,* 858 S.W.2d 906, 907 (Tenn.1993). We apply these standards to resolve the issue in this appeal.

### REASONABLE SUSPICION

In this Court, the defendant contends that the investigatory stop was unconstitutional because the officer did not have reasonable suspicion, supported by specific and articulable facts, to believe that the defendant was violating the law. In support of his claim, the defendant argues that even though the officer knew the defendant's license had been revoked six months earlier, the officer was also aware of the availability of restricted licenses, and therefore, had no reason to believe the defendant was violating the law by operating an automobile. The State responds that given the totality of the information known to the officer, the stop was based upon reasonable suspicion. The State also maintains that the officer was not required to check the status of the defendant's license before initiating the stop.

We begin our analysis of this issue with the text of the Fourth Amendment[7] to the United States Constitution which provides:

**Unreasonable searches and seizures.—** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article 1, Section 7 of the Constitution of Tennessee guarantees

that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." *State v. Downey,* 945 S.W.2d 102, 106 (Tenn. 1997), quoting *Sneed v. State,* 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

■ Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); *State v. Bartram,* 925 S.W.2d 227, 229–30 (Tenn.1996).

---

**7.** The Fourth Amendment is applicable to the states through the Fourteenth Amendment.

*Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

■ Though it was a temporary detention for a limited purpose, the stop of the defendant's vehicle in this case, without question, constitutes a seizure and implicates the protection of both the state and federal constitutions. *Whren v. United States,* 517 U.S. 806, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *See also United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *Colorado v. Bannister,* 449 U.S. 1, 4 n. 3, 101 S.Ct. 42, 44 n. 3, 66 L.Ed.2d 1 (1980) (When an officer turns on his blue lights, he or she has clearly initiated a stop). Because it was not conducted pursuant to a warrant, the investigatory stop was presumptively unreasonable. However, the lower courts appropriately denied the defendant's motion to suppress because the seizure in this case was conducted pursuant to a narrowly defined exception to the warrant requirement.

■ In *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), the United States Supreme Court applied a balancing test [8] to determine whether the law enforcement practice of "stop and frisk" violated the proscriptions of the Fourth Amendment to the United States Constitution. In that case, a police officer became suspicious of two men who separately and repeatedly walked up and down a street peering into a store window. After each trek, the men talked to a third man up the street. The officer, after observing this conduct for a short time, followed the suspects, stopped and frisked them, and discovered that two of them were carrying pistols. Charged with the crime of carrying a concealed weapon, Terry moved to suppress the evidence on the basis that the stop and frisk was unconstitutional. Balancing the intrusion on the individual's Fourth Amendment privacy interests against the promotion of legitimate governmental interests, the Court in *Terry* determined that the law enforcement *practice* of a brief investigatory stop is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.[9] *Id.*

---

**8.** The balancing test was first applied in *Camara v. Municipal Court,* 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). In his concurring opinion, Justice Reid maintains that courts must engage in "detailed balancing" on a case-by-case basis to determine the constitutionality of an investigatory stop. That statement indicates a misunderstanding of the nature and purpose of the balancing test. The balancing test is not a matter for case-by-case application, but rather "a technique for establishing the quantum of evidence needed for certain distinct kinds of official action." Wayne R. LaFave, 4 *Search & Seizure, A Treatise on the Fourth Amendment,* § 9.1(d), p.13 (3d ed. West 1996); *See e.g. Chandler v. Miller,* —— U.S. ——, ——, 117 S.Ct. 1295, 1301, 137 L.Ed.2d 513 (1997); *Whren,* 517 U.S. at ——, 116 S.Ct. at 1776. While case-by-case balancing "might well be a stimulating exercise in the rarefied atmosphere of an appellate court or law school classroom, it is clearly asking too much to expect policemen to make on-the-spot judgments in this way or, indeed, to require trial judges to review police conduct in this fashion." Lafave, § 9.1(d), p. 13. Unlike Justice Reid, we decline to adopt that approach, which is both contrary to well-established law and unworkable in practice.

**9.** In his concurring opinion, Justice Reid concludes that the stop in this case was invalid under *Terry,* but constitutionally sound because based upon probable cause. It is well-settled that "the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." *United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Therefore, Justice Reid's conclusion is legally inconsistent and is a result of his erroneous holding that a constitutionally valid investigatory stop requires not only reasonable suspicion, but also "exigent circumstances." Contrary to Justice Reid's concurring opinion, neither *Terry* nor its progeny articulate a second "exigent circumstances" requirement. Indeed, the phrase, "exigent circumstances" is itself a term of art which denotes an independent exception to the warrant requirement of the Fourth Amendment. The cases cited by Justice Reid do not support his holding. In *State v. Pully,* 863 S.W.2d 29 (Tenn.1993), the police officer initiated the investigatory stop upon an anonymous informant's tip that a person was driving through a neighborhood threatening residents with a gun. To justify police action under Tennessee law an informant's tip must be reliable, which requires a showing of both the informant's credibility and basis of knowledge. *State v. Jacumin,* 778 S.W.2d 430, 436 (Tenn. 1989). This Court in *Pully* simply held that when a threat of impending violence is involved the legal test of reliability of an anonymous informant's tip need not be strictly enforced. Since the stop in this case was not initiated as a result of an anonymous informant's tip, *Pully*

Eleven years later in *Delaware v. Prouse,* the Court concluded that the same standard applied in the context of investigatory automobile stops. In that case a police officer on a "roving patrol" aimed at detecting unlicensed drivers made a suspicionless stop of an automobile. The purpose of the stop was to check the driver's license and registration. The officer stopped Prouse's automobile because he "saw the car in the area and wasn't answering any complaints...." *Id.,* 440 U.S. at 651, 99 S.Ct. at 1394. When the officer approached the car, he smelled marijuana and thereafter seized the marijuana, which was in plain view on the floor of the car. In concluding that the suspicionless, random stop was unconstitutional, the *Prouse* court described the balancing test as follows:

> The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions. Thus, the permissibility of a particular law enforcement *practice* is judged by balancing its intrusion on the individual's Fourth Amendment interest against its promotion of legitimate governmental interests. Implemented in this manner, the reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against an objective standard, whether this be probable cause or a less stringent test. [footnote citing *Terry*] In those situations in which the balance of interests precludes insistence upon some

quantum of individualized suspicion, other safeguards are generally relied upon to assure that the individual's reasonable expectation of privacy is not subject to the discretion of the official in the field.

*Id.,* 440 U.S. at 653–54, 99 S.Ct. at 1396 (emphasis added)(internal citations and quotations omitted). Utilizing that test, the *Prouse* Court held "that *except* in those situations in which there is *at least articulable and reasonable suspicion that a motorist is unlicensed* or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his license and the registration of the automobile are unreasonable under the Fourth Amendment." *Id.,* 440 U.S. at 663, 99 S.Ct. at 1401 (emphasis added). *Prouse,* therefore, stands for the proposition that investigatory stops based upon reasonable suspicion that a driver is unlicensed are constitutionally permissible.[10] *See also Chandler v. Miller,* ⸺ U.S. ⸺, ⸺, 117 S.Ct. 1295, 1298, 137 L.Ed.2d 513 (1997)(The Fourth Amendment's prohibition against "unreasonable searches and seizures generally bars officials from undertaking a search or seizure absent individualized suspicion."); *See also Griffin v. State,* 604 S.W.2d 40, 42 (Tenn.1980); *State v. McCulloch,* 906 S.W.2d 3 (Tenn. Crim.App.1995).

Likewise, in *Watkins,* this Court upheld the constitutionality of an investigatory stop of a motor vehicle and the ensuing search, where the stop was based upon reasonable suspicion. *Id.,* 827 S.W.2d at 294. In that case, the officer initiating the stop had per-

is inapplicable and does not support Justice Reid's conclusion that *Terry* articulated an "exigent circumstances" requirement. Moreover, Justice Reid's assertion that our holding "would allow the detention and at least a patdown search of any person suspected of possessing illegal drugs or other contraband" is erroneous. A frisk is warranted under *Terry* only if the police officer has a reasonable suspicion based upon specific and articulable facts that the suspect is armed. *Id.,* 392 U.S. at 27, 88 S.Ct. at 1883.

**10.** Justice Reid maintains that our interpretation is inconsistent with the language of *Prouse.* He quotes the following sentence from that case:

"We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with the *unbridled* discretion of police officers." In fact, that language supports our interpretation. The stop in *Prouse* was completely random and not based upon *any* level of individualized suspicion. The police officer's discretion was unbridled. It was the absence of reasonable suspicion which invalidated the stop, not the absence of exigent circumstances. *See also Hughes v. State,* 588 S.W.2d 296 (Tenn.1979) However, where, as here, an investigatory stop is initiated upon a reasonable suspicion that a driver is unlicensed, the police officer is not exercising unbridled discretion, and the stop is constitutional.

sonal knowledge that a capias had been issued for the defendant's arrest. Other officers also had informed the arresting officers that the defendant often drove a black Cadillac inscribed with the words, "The Duke." When the officers observed a car matching that description, they "decided to stop the vehicle and investigate the identity of the driver." *Id.*, 827 S.W.2d at 295. After stopping the car, asking for a driver's license, and learning that the defendant had none, the officers called in by radio to verify the continuing viability of the capias. *Id.* The capias was verified and the officers arrested the defendant and searched the vehicle. Considering the totality of the circumstances this Court refused to suppress the evidence discovered during the search, holding that the initial stop was constitutionally valid because it was based upon reasonable suspicion, supported by specific and articulable facts, "that the defendant was the driver of the vehicle and that he was the person wanted on the outstanding capias." *Id.*, 827 S.W.2d at 295.

■ In so holding, we observed that a court must consider the totality of the circumstances when evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts. *Id.*, 827 S.W.2d at 294; *United State v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Circumstances relevant to that evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him. *Watkins*, 827 S.W.2d at 294; *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695; *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880.

The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires

some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means a fair probability that contraband or evidence of a crime will be found and *the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause.*

*Sokolow*, 490 U.S. at 7–8, 109 S.Ct. at 1585 (emphasis added)(internal citations and quotations omitted).

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); *State v. Pulley*, 863 S.W.2d 29, 32 (Tenn. 1993); *Cf. Peters v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)(companion case to *Terry* in which the Court held it was unnecessary to discuss reasonable suspicion since the officer had probable cause for the arrest).

■ Moreover, the availability of other less intrusive investigatory techniques is not relevant to the constitutional validity of an officer's decision to initiate the investigatory stop, if an investigatory stop is based upon specific and articulable facts giving rise to a reasonable suspicion. Indeed, the United States Supreme Court in *Sokolow* expressly rejected the notion that law enforcement officials are obligated to use the least intrusive means to verify or dispel their suspicions. "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques." *Id.*, 490 U.S. at 11, 109 S.Ct. at 1581.[11] In *Watkins*, this Court implicitly rejected that argument by upholding the stop even though the police officers did not verify

---

11. Justice Reid's assertion that the availability of less intrusive investigatory means should be considered by courts evaluating the constitutionality

of investigatory stops is directly contrary to *Sokolow*.

the capias until after the automobile was stopped and the defendant identified.

■ Considering the totality of the circumstances of this case in light of the well-settled principles of law set forth above, we conclude that the officer's decision to initiate the investigatory stop was based upon reasonable suspicion, supported by specific and articulable facts, that the defendant was driving on a revoked license. The officer had previously arrested Yeargan, so he was acquainted with the defendant and could identify the defendant by sight. In addition, the officer had personal knowledge that Yeargan's driver's license had been revoked for a period of one year, and that only six months had passed since the revocation. When the officer observed Yeargan driving the automobile, therefore, he had a reasonable suspicion based upon articulable and specific facts that Yeargan was committing a criminal offense, driving on a revoked license. *Prouse, supra; McCulloch, supra; Roberson v. Metro. Gov't of Nashville & Davidson Co.,* 56 Tenn.App. 729, 412 S.W.2d 902, 905 (Tenn.App.1966) (police officer who arrests a man for drunk driving and testifies at trial against the man who was convicted and whose license was revoked for one year, may arrest him when he observes the man driving the following day). Contrary to the defendant's assertions, the officer had no constitutional obligation to verify the status of the defendant's license before making the stop. Indeed, the availability of less intrusive investigatory techniques does not vitiate the constitutional validity of a stop which is supported by reasonable suspicion.

### CONCLUSION

In his concurring opinion Justice Reid contends that the investigatory stop in this case was invalid because it was not supported by exigent circumstances as well as reasonable suspicion. Rather than embarking on a path fraught with unknown consequences, we adhere to the well-settled principle of law, that

to be constitutionally valid under either the Fourth Amendment or Article I, Section 7, a brief investigatory stop simply must be based upon reasonable suspicion which is supported by specific and articulable facts. Because the investigatory stop in this case was based upon reasonable suspicion, it was valid under both the federal and state constitutions. Accordingly, the lower courts properly refused to suppress the evidence of intoxication derived from field sobriety tests and the officer's personal observation of the defendant after the stop. The judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress is affirmed.

ANDERSON, C.J., and BIRCH, J., and O'BRIEN, Special Justice.

REID, J., separate opinion concurring in results.

REID, Justice, concurring in results.

I agree that the motion to suppress the evidence be denied. I write separately because the language of the majority opinion reduces the constitutional standard for search and seizure to "reasonable suspicion." [1] The majority misconstrues *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court case which recognized the validity of investigative stops based on exigent circumstances, and ignores *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the most recent United States Supreme Court case discussing the requirements for probable cause. The majority also fails to follow, or even mention, the holdings in *Hughes v. State,* 588 S.W.2d 296 (Tenn.1979) and *State v. Pully,* 863 S.W.2d 29 (Tenn. 1993) in which this Court discussed in detail the rationale and requirements for an investigative stop.

### I

The appeal is from convictions of driving under the influence of an intoxicant, second

---

1. "Because the investigatory stop in this case was based upon reasonable suspicion, it was valid under both the federal and state constitutions." Majority Opinion at 633. Particularly alarming is the statement: "Indeed, the avail-

ability of less intrusive investigatory techniques does not vitiate the constitutional validity of a stop which is supported by reasonable suspicion." *Id.*

offense,[2] and driving a motor vehicle with a revoked driver license,[3] entered upon the defendant's pleas of guilty, reserving a dispositive question of law.

On Thursday, January 28, 1993, at approximately 2:20 p.m., Tullahoma Police Officer Jason Ferrell observed the defendant, Wayne Lee Yeargan, driving a pickup truck on a public street in Tullahoma. Previously, Officer Ferrell had arrested the defendant for driving under the influence of an intoxicant and had been present in the general sessions court on July 2, 1992 when the defendant pleaded guilty to the offense and was sentenced to 11 months and 29 days in jail, a fine of $250, and the revocation of his driver license for one year from the date of the judgment.

When the officer began following the defendant's truck, the defendant, according to the officer's testimony, "sped up some, he wasn't going at a high rate of speed, but he accelerated." In the officer's view, the defendant "attempted to put some traffic between us." The defendant then drove into the parking lot of Ruby's Lounge, a local bar; the officer followed and put on his blue lights. The defendant parked and got out of his truck. The officer asked to see his driver license, and he produced a restricted license issued pursuant to a court order which permitted the defendant to drive "in Coffee County only as necessary to complete job tasks" between the hours of 7 a.m. and 7 p.m. The defendant's employment was listed on the order granting the restricted license as farming and "rental property owner." The officer testified that when he asked the defendant why he had driven to the bar, the defendant replied that he "had come to the bar to meet a guy about a cow." Based on his observations and a field sobriety test, the officer concluded that the defendant was under the influence of an intoxicant and arrested him for driving under the influence and driving on a revoked license. The police officer admitted that he was aware of the availability of restricted licenses for driving offenders. However, he testified that if he had tried to establish the status of the defendant's license before stopping him, it would have taken approximately 15 minutes for the police radio operator to determine whether the defendant had a restricted license.

The Court of Criminal Appeals found that "a prudent officer could reasonably have believed that the appellant was driving on a revoked license" and held that the officer had "probable cause to conduct an investigative stop." In reaching that conclusion, the Court of Criminal Appeals relied upon *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *State v. Watkins,* 827 S.W.2d 293 (Tenn.1992).

**II**

This Court recently clarified the standard of review under which a trial court's findings of fact on suppression issues are to be reviewed:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. We also note that this standard of review is consistent with Tenn. R.App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise." Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard.

*State v. Odom,* 928 S.W.2d 18, 23 (Tenn. 1996). The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo.

---

**2.** Tenn.Code Ann. § 55–10–401 (1993).

**3.** Tenn.Code Ann. § 55–50–504 (1993).

*Beare Co. v. Tennessee Dept. of Revenue,* 858 S.W.2d 906, 907 (Tenn.1993).

## III

### A.

The relevant constitutional provisions are the Fourth Amendment to the United States Constitution and Article 1, Section 7, of the Tennessee Constitution.[4] The Fourth Amendment "exists, primarily, for the benefit of the citizen; its origin and history clearly manifest that the Fourth Amendment was intended as a restraint upon the activities of the sovereign authority to the extent that a citizen may be secure in the unmolested enjoyment of home and possessions, except by virtue of process duly issued." *State v. Burroughs,* 926 S.W.2d 243, 245 (Tenn.1996). The Court recently reaffirmed this historic principle:

> [B]oth the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution prohibit "unreasonable" searches and seizures. The State may not invade this personal constitutional right of the individual citizen except under the most exigent circumstances.
>
> . . .
>
> A warrantless search and seizure, therefore, is presumed unreasonable unless it falls into one of the narrowly defined exceptions, or exigent circumstances, to the warrant requirement. The mere existence of these circumstances does not necessarily validate a warrantless search. As pointed out in [*United States v. Nelson,* 459 F.2d 884, 885 (6th Cir.1972) ], exceptions are

jealously and carefully drawn." There must be a showing by those asserting the exception that the exigencies of the situation made the search imperative. The burden is on those seeking the exception to show the need.

*State v. Bartram,* 925 S.W.2d 227, 229–30 (Tenn.1996) (citations omitted).

The stop of the defendant's vehicle in this case implicates the protection of both the state and federal constitutions: "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States,* 517 U.S. 806, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); *Delaware v. Prouse,* 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

> When an officer turns on his blue lights, he or she has clearly initiated a stop. See *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *Colorado v. Bannister,* 449 U.S. 1,4 n. 3, 101 S.Ct. 42, 44 n. 3, 66 L.Ed.2d 1 (1980). Moreover, as the United States Supreme Court observed in *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968), "[i]t must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." See also *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975).

*State v. Pully,*[5] 863 S.W.2d 29, 30 (Tenn. 1993). "An automobile stop is thus subject to the constitutional imperative that it not be

---

**4.** The Fourth Amendment states,

> **Unreasonable searches and seizures.**—The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). Article 1, Section 7 of the Tennessee Constitution states,

> **Unreasonable searches and seizures—General warrants.**—That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Tenn. Const. art. I, § 7.

**5.** The correct spelling of the defendant's name is "Pulley"; however, it is cited by West Publishing Company as "Pully."

'unreasonable' under the circumstances." *Whren v. United States,* 517 U.S. at —, 116 S.Ct. at 1772; *see State v. Downey,* 945 S.W.2d 102, 106 (Tenn.1997).

The Fourth Amendment and Article I, Section 7 require the existence of "probable cause" for making an arrest without an arrest warrant. *Beck v. Ohio,* 379 U.S. 89, 89, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *State v. Melson,* 638 S.W.2d 342, 350 (Tenn. 1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). In order to have probable cause for an arrest without a warrant, at the moment of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, must be "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. at 91, 85 S.Ct. at 225; *Melson,* 638 S.W.2d at 350.

Although probable cause is the only basis on which a person may be arrested without a warrant, under certain circumstances, a person may be detained briefly by a police officer without a warrant or probable cause. Under exigent circumstances, "a police officer may make an investigative stop of a motor vehicle when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Watkins,* 827 S.W.2d 293, 294 (Tenn.1992); *see also Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968))).

The motion to suppress is directed to evidence of the defendant's intoxication, which was apparent to the officer upon observing his appearance and demeanor, consequently, the admissibility of the evidence depends entirely upon the legality of the stop. The stop was permissible and the evidence admissible if there was probable cause for an arrest or if there were grounds for an investigative stop.

Two distinct but closely related issues, both governed by the Fourth Amendment and Art. I, Section 7, are presented in this case. The facts and circumstances of the case must be examined first to determine if they constitute grounds justifying the defendant's arrest. If the facts and circumstances do not warrant the reasonable belief that a crime has been or is being committed and, therefore, there is no probable cause for arrest, then secondly, those facts and circumstances may be examined to determine if they permit an investigative stop.

### B.

Although the determination of probable cause turns on the facts and circumstances of each case, the framework within which that determination is made is well settled. Significant aspects of that framework are set forth in the following material in 2 Wayne R. LaFave, *Search and Seizure* § 3.1(b), pp. 6, and § 3.2, p. 22 (3d ed.1996):

> It is generally assumed by the Supreme Court and the lower courts that the same quantum of evidence is required whether one is concerned with probable cause to arrest or probable cause to search. For this reason, discussions by courts of the probable cause requirement often refer to and rely upon prior decisions without regard to whether these earlier cases were concerned with the grounds to arrest or the grounds to search. . . .
>
> . . . .
>
> Notwithstanding the frequency with which police, lawyers and judges must decide whether a given set of facts amounts to probable cause, it remains "an exceedingly difficult concept to objectify." As noted in *United States v. Davis:*

> > The contours and salient principles of probable cause have been faithfully catalogued in a surfeit of decisional law. Probable cause exists when known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that an offense has been or is being committed. . . . A significantly lower quanta of proof is required to establish probable cause than guilt. . . . Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine "philosophical concept existing in a vacuum," . . . but rather it requires a pragmatic analysis of "everyday life on which reasonable and prudent men, not

legal technicians, act." ... It is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training.... It is "a plastic concept whose existence depends on the facts and circumstances of the particular case." ... Because of the kaleidoscopic myriad that goes into the probable cause mix "seldom does a decision in one case handily dispose of the next." ... It is however the totality of these facts and circumstances which is the relevant consideration.... Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit.

The most recent decision by this Court considering probable cause to arrest is *State v. Melson,* 638 S.W.2d 342 (Tenn.1982), *cert. denied,* 459 U.S. 1137, 103 S.Ct. 770, 74 L.Ed.2d 983 (1983). In that case, the Court found that the information given to police officers immediately after the homicide was committed, the defendant's presence nearby, and the blood spots on the defendant's clothing, constituted probable cause for the defendant's seizure and arrest, stating,

> Since there was no warrant, we must pass upon the validity of the arrest under the statute permitting an officer to make a warrantless arrest when a felony has been committed and he has reasonable or probable cause to believe that the arrestee committed the felony. Tenn.Code Ann. § 40–803(3). It is conceded that probable cause must be more than mere suspicion, *West v. State,* 221 Tenn. 178, 425 S.W.2d 602 (1968), but neither must it be absolute certainty, *Grey v. State,* 542 S.W.2d 102 (Tenn.Cr.App.1976). Reasonable or probable cause consists of grounds which would lead a reasonable man to believe that the person arrested was guilty of the felony, *Davis v. State,* 2 Tenn.Cr.App. 297, 453 S.W.2d 438 (1969). In *Davis,* we quoted from *Jones v. State,* 161 Tenn. 370, 33 S.W.2d 59 (1930), wherein it was stated:
>
> "In *Beck v. State of Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), the [United States Supreme] Court stated:
>
> > 'Whether that arrest was constitutionally valid depends ... upon whether, at the moment the arrest was made, the officers had probable cause to make it— whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed ... an offense.' "
>
> 453 S.W.2d at 440.

*Id.* at 350–51. Thus, probable cause is established when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information warrant a prudent person in believing the defendant has committed or is committing an offense.

The Supreme Court of the United States recently emphasized that where there is probable cause, the "reasonableness" of the search and seizure required by the Fourth Amendment is established. In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), police officers observed the defendant violating several traffic ordinances. They pursued the defendant's vehicle and an officer approached the vehicle while it was stopped at a traffic light. The officer, who was not in uniform, identified himself to the defendant as a police officer and directed the defendant to put the vehicle in park. The officer saw the defendant openly holding contraband in his hands. The defendant in *Whren* pressed the Supreme Court to suppress the evidence obtained on the ground that the stop was pretextual. The defendant insisted that the officer used the traffic violations as a pretext for stopping the defendant when his real purpose was to find evidence of illegal drug activity. Instead, the Court held that the ulterior motives of the officer do not invalidate police conduct that is justified on the basis of probable cause.

It is of course true that in principle every Fourth Amendment case, since it turns upon a "reasonableness" determination, involves a balancing of all relevant factors. With rare exceptions not applicable here, however, the result of that bal-

ancing is not in doubt where the search or seizure is based upon probable cause. That is why petitioners must rely upon cases like *Prouse* to provide examples of actual "balancing" analysis. There, the police action in question was a random traffic stop for the purpose of checking a motorist's license and vehicle registration, a practice that ... involves police intrusion *without the probable cause that is its traditional justification.*

*Id.* at ——, 116 S.Ct. at 1776 (1996) (emphasis in original). *See also Ohio v. Robinette,* —— U.S. ——, ——, 117 S.Ct. 417, 420–21, 136 L.Ed.2d 347 (1996). The Supreme Court did not specifically discuss investigative stops authorized by *Terry* and its progeny, but its holding validates, under federal law, all detentions authorized by probable cause.

Where probable cause has existed, the only cases in which we have found it necessary actually to perform the "balancing" analysis involved searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests—such as, for example, seizure by means of deadly force.... The making of a traffic stop out-of-uniform does not remotely qualify as such an extreme practice, and so is governed by the usual rule that probable cause to believe the law has been broken "outbalances" private interest in avoiding police contact.

*Whren v. United States,* 517 U.S. at ——, 116 S.Ct. at 1776–77. Consequently, a balancing analysis under *Terry* is not necessary where there is probable cause.

### C.

However, as recognized in *Whren,* the most recent decision by the United States Supreme Court on this issue, where there is no probable cause there must be "detailed 'balancing' to decide the constitutionality of automobile stops" involving sufficient, specific, identified facts in order to justify even a

limited intrusion.[6] *Id.* at ——, 116 S.Ct. at 1776.

The validity of an investigative stop under exigent circumstances was first recognized by the United States Supreme Court in *Terry v. Ohio.* In that case, the Court addressed the issue of whether the police have the right to stop and question an individual in the absence of probable cause. In *Terry,* a policeman became suspicious of two men who separately walked up and down a street several times peering into a store, talked to a third man and followed him up the street a short time later. A police officer followed the suspects, confronted and searched them, and found a pistol on two of them. Terry, charged with the crime of carrying a concealed weapon, moved to suppress the weapon as evidence. The Court held:

Each case of this sort will, of course, have to be decided on its own facts. We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

*Terry v. State of Ohio,* 392 U.S. at 30, 88 S.Ct. at 1884–85. The majority opinion states that *Terry* requires only a reasonable suspicion supported by specific and articulated facts that a criminal offense has been or is about to be committed. However, *Terry* specifically limited its holding to allow a stop where the officer has not only a reasonable suspicion that "criminal activity may be

---

**6.** The majority states that *Whren* does not support the proposition that balancing is necessary in the absence of probable cause where a reasonable suspicion is present. *See* Majority Opinion at 630, n. 8. *Whren* specifically states, "What is true of *Prouse* is also true of other cases that engaged in detailed 'balancing' to decide the constitutionality of automobile stops, ... the detailed 'balancing' analysis was necessary because they involved seizures without probable cause." *Id.* at ——, 116 S.Ct. at 1776.

afoot," but also a reasonable suspicion that the persons "may be armed and presently dangerous," and to allow a search where after reasonable inquiries, nothing "serves to dispel his reasonable fear for his own or others' safety." *Terry v. State of Ohio*, 392 U.S. at 30, 88 S.Ct. at 1884–85. The requirement of exigent circumstances is not included in the rule announced by the majority.

Subsequent decisions have reaffirmed the holding in *Terry* that investigative stops are limited to extraordinary situations. In *Delaware v. Prouse*, the Supreme Court found the stop to be constitutionally unreasonable. The Court held that a stop to check a license and registration is unreasonable "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." [7] *Delaware v. Prouse*, 440 U.S. 648, 664, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979). In *Delaware v. Prouse*, a police officer stopped an automobile though "he had observed neither traffic or equipment violations nor any suspicious activity." *Id.* at 651, 99 S.Ct. at 1394. The stop was made solely to check the driver's license and registration because the officer "saw the car in the area and wasn't answering any complaints...." *Id.* Upon approaching the vehicle, the officer smelled marijuana, and seized marijuana in plain view on the floor of the car. The Court suppressed this evidence because there was no reasonable basis for the stop.

The majority relies on *Prouse* to support its position. In *Prouse*, the Court first discussed *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) and *United States v. Martinez–Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), where the Court upheld checkpoint stops and disallowed roving patrol stops. These determinations were based on the exi-

gent circumstances surrounding illegal aliens. *Prouse*, 440 U.S. at 656, 99 S.Ct. at 1397. The *Prouse* Court found that in the case of other random stops which were not based on any suspicion of a violation of the law, no interests (or exigent circumstances) existed to justify the intrusion. The majority interprets the holding to support the conclusion that in the presence of a reasonable suspicion, a stop is always constitutional. *See* Majority Opinion at 633. Such an interpretation is inconsistent with the language in *Prouse* specifically limiting its holding: "We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." *Id.* at 664, 99 S.Ct. at 1401.[8]

Guidance as to the circumstances in which an investigative stop is justified is found in Justice Jackson's dissent in *Brinegar v. United States*, 338 U.S. 160, 183, 69 S.Ct. 1302, 1314, 93 L.Ed. 1879 (1949):

> If we assume, for example, that a child is kidnapped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action.... But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger.

In balancing public and private interests, exigent circumstances are necessary to justify the intrusion. The *Terry* decision as developed by other cases which have allowed short term seizures without a probable cause for arrest, created a balancing analysis which has been summarized by this Court as follows:

---

**7.** *See also* Tenn.Code Ann. § 40–7–103 (Supp.1996)(setting forth grounds for arrest by an officer without a warrant). The issue of whether section 40–7–103 was complied with in this case is not before the Court.

**8.** Nor do the cases of *Michigan v. Sitz* or *State v. Downey*, holding constitutional sobriety check-

points, support the majority's position. In both of those cases, the Court vividly illustrates the exigent circumstances surrounding the drunken driving problem which prompted the decisions. *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 2485–86 (1990); *State v. Downey*, 945 S.W.2d 102, 104 (Tenn.1997).

In general, although the Fourth Amendment requires "probable cause" before an arrest is deemed to be reasonable, the reasonableness of seizures less intrusive than a full-scale arrest is judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy. *See, e.g., Brown v. Texas,* 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). In *Terry v. Ohio,* 392 U.S. at 20–21, 88 S.Ct. at 1879–80, the United States Supreme Court acknowledged police officers' need for "an escalating set of flexible responses, graduated in relation to the amount of information they possess." *Id.* at 10, 88 S.Ct. at 1874. The *Terry* Court held that to justify a stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. at 1880.

*State v. Pully,* 863 S.W.2d at 30.

This Court has, in several decisions, addressed the constitutional validity of investigative stops. In *Hughes v. State,* 588 S.W.2d 296, 309 (Tenn.1979), after reviewing the United States Supreme Court decisions on investigative stops, the Court stated:

> A citizen has a constitutionally ordered right to be secure in his person and possessions and to be free from "arbitrary invasions solely at the unfettered discretion" of the police.

In that case, the defendant and a companion drove to a store, the defendant dropped off his companion at the store and left. The companion bought some snacks which he consumed while reading magazines at the magazine rack. The proprietor contacted the police, related these facts and concluded that the defendant was "acting a little strange or suspicious." *Id.* at 299. When officers arrived at the store, they restrained the companion in the rear seat of the patrol car while it was determined that he had no criminal record. The officers began searching for the defendant, who was then returning to the store parking lot. The defendant rolled down the window when an officer approached the automobile and asked for his driver license. Because the officer smelled burning marijuana when the window was lowered, the officer searched the automobile and discovered the contraband. In *Hughes,* the Court held that the seizure was not based on information which contained "specific and articulable facts or inferences from facts, sufficient to generate a reasonable conclusion that a crime had been, was, or was about to be committed." *Id.* at 308.

In *State v. Watkins,* 827 S.W.2d 293, 294 (Tenn.1992), the officer, who had made an investigative stop, testified at the suppression hearing that he had personal knowledge that a capias was outstanding for the defendant's arrest, that other police officers had informed him that the defendant often drove a black Cadillac inscribed with the words "The Duke," and that when he saw this car, because of the outstanding capias, the officers stopped the vehicle. This Court found that the police officers had the required reasonable suspicion, supported by specific and articulable facts, to withstand the constitutional challenge to the stop. *Id.* at 295. The Court stated that,

> In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Id.,* 449 U.S. at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

*Id.* at 294.[9]

In *State v. Pully,* 863 S.W.2d 29 (Tenn. 1993), the officer received an anonymous ra-

9. Although the charge on which the *capias* had issued for Watkins is not stated in the opinion, it apparently was a major factor on which the Court relied in finding the stop justified. Even

dio report that the defendant was in a yellow Ford in a trailer park, was armed with a shotgun, and was "supposed to shoot someone." *Id.* On the way to the trailer park, the officer received another similar report. The officer did not find the defendant at the trailer park; he then drove to a gas station where the defendant was parked in a yellow Ford. The officer turned on his blue lights, asked the defendant to get out of the car, and saw a shotgun on the front floorboard of the car. He arrested the defendant for driving on a revoked license, for a second offense of driving under the influence of alcohol, and for possessing a loaded weapon, a hunting knife, and a billy club. The trial court suppressed the weapons and the results of the blood/alcohol test on the grounds that the officer had no reasonable suspicion that the defendant had or would commit a crime. This Court reversed that decision, analyzing the tests for determining the reliability of informants' tips in the context of "probable cause" determinations, and stating,

> In this case, the public interest served by the stop was the prevention of violent crime. The scope of the intrusion was minor; it was intended to be only a temporary stop of the defendant's car. Finally, the "indicia of reliability" were sufficient in light of these other considerations to warrant a brief investigatory stop. .... Although the reliability of the tip would certainly not establish probable cause to search or arrest, and would not furnish reasonable suspicion to stop the defendant in all circumstances, we conclude that, given the threat of violence, the police had "specific and articulable facts" to warrant the investigatory stop in this case.

*Id.* at 34.

This Court recently balanced public interest against private rights in deciding that sobriety roadblocks do not *per se* violate the Fourth Amendment or Article I, Section 7. The Court stated:

> In order for us to determine whether a seizure which is less intrusive than a traditional arrest is reasonable, we must bal-

ance the public interest served by the seizure with the severity of the interference with individual liberty.

*State v. Downey,* 945 S.W.2d 102, 104 (Tenn. 1997).

Recognition that an investigative stop may be constitutionally reasonable, even though an arrest would not be constitutionally reasonable, was not intended to be a relaxation of constitutional protection against intrusions by the State. *See Minnesota v. Dickerson,* 508 U.S. 366, 374, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993); *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Instead, it is a recognition that a limited intrusion under exigent circumstances may be justified as constitutionally reasonable. Two essential conditions characterize a valid investigative stop, exigent circumstances and limited intrusion. After reviewing decisions from other jurisdictions in which investigative stops were found to be justified, the Court in Pully stated: "These cases show that the gravity of the perceived harm is a crucial element in assessing the reasonableness of an investigative *Terry* stop." Pully, 863 S.W.2d at 33. The Court then approved this statement from a concurring opinion in *United States v. Mendenhall,* 446 U.S. 544, 561, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980) (Powell, J., concurring):

> The reasonableness of a stop turns on the facts and circumstances of each case. In particular, the Court has emphasized (i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience.

*State v. Pully,* 863 S.W.2d at 34.

The burden is on the State to show that exigent circumstances make the search imperative. *State v. Bartram,* 925 S.W.2d 227, 230 (Tenn.1996); *State v. Watkins,* 827 S.W.2d 293, 295 (Tenn.1992).

### D.

As stated previously, the record will be examined first to determine if there was

though the stop which resulted in the defendant's arrest was sustained as an investigative stop, the facts and circumstances also would support a

finding of probable cause, which issue was not discussed in the opinion.

probable cause to arrest the defendant in this case. The facts and circumstances show that Officer Ferrell had probable cause to believe that the defendant was violating the law. Initially, the officer's knowledge that the defendant's driver license had been revoked for a year was not reasonable cause to believe that the defendant was committing an offense. Since he also knew that restricted licenses were available for business purposes, his observation of the defendant, who was a farmer, driving a pickup truck during working hours, would reasonably support nothing more than a suspicion that the defendant was driving without authority. Stated another way, he did not have reasonable cause to believe the defendant had not applied for or had been denied a restricted license. However, the officer knew that a restricted license would not authorize a farmer to drive to a bar. The defendant's furtive driving behavior and his stopping at the bar were sufficient to elevate suspicion to probable cause. Had the defendant not been in violation of the restricted license by driving while drinking intoxicants, there was no obvious reason to avoid Officer Ferrell. Also, had the defendant been about his business purposes, he would not have violated the restricted license by stopping at a bar. These facts and circumstances were sufficient to support a finding of probable cause justifying the stop and the subsequent arrest.

### E.

Even though Officer Ferrell had probable cause to stop the defendant's vehicle, it should be observed that the stop would fail the balancing test that must be applied to the facts and circumstances where there is reliance on an investigative stop. As stated in *Hughes v. State*, 588 S.W.2d at 303:

> Thus, in the context of a "stop and frisk" situation, the Court freed Fourth Amendment analysis from the rigidity of the probable cause standard but in so doing it imposed a standard of specific and articulable facts. The detection and prevention of crime and the safety of the officer are

balanced against the nature and extent of and the reasons for the intrusion.

The decisions require an articulable and reasonable suspicion that the vehicle or the occupant is subject to seizure for a violation of the law, and, further, " 'that a seizure must be based on *specific, objective facts* indicating that society's legitimate interests require the seizure of the particular individual." *Id.* at 307 (quoting *Brown v. Texas*, 443 U.S. 47, 52, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)). The facts and circumstances of this case support the first requirement, reasonable suspicion (and even probable cause). However, those facts and circumstances do not show exigent circumstances requiring that the defendant be seized. Officer Ferrell had no basis on which to suspect that the defendant was intoxicated. The defendant was not speeding, nor was he, to the officer's observation, violating any traffic regulations. His observable operation of the vehicle posed no danger to the public. The only suspected violation was driving on a revoked license. The public's interest in enforcing the law could as well have been protected by checking the records regarding the status of the defendant's license and procuring a warrant for his arrest or making an accusation to the grand jury. The purpose of the stop was not limited to insuring the officer's safety or the protection of the public. In contrast to this situation, the exigent circumstance in Pully was that the officer had reliable information that the defendant was in possession of a shotgun and "was supposed to shoot someone." Pully, 863 S.W.2d at 29. The cases relied upon in Pully to justify the stop involved situations where the officer reasonably suspected that the person stopped was in the possession of a concealed weapon, or items taken from the victim of a recent murder. Pully, 863 S.W.2d at 33–34.[10] Consequently, the evidence does not support a finding of exigent circumstances.

The majority states that a brief investigatory stop is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be com-

---

10. For additional decisions based on exigent circumstances, *see* 4 *Wharton's Criminal Evidence* § 717, p. 826 (14th ed.1987).

mitted. Majority Opinion at 632. As a practical matter, the language of the majority would allow the detention and at least a patdown search of any person suspected of possessing illegal drugs or other contraband. The majority, then, would eliminate the need for exigent circumstances and allow officers to proceed only on "reasonable suspicion," only. The language of the majority would allow detention upon mere suspicion. *See Minnesota v. Dickerson,* 508 U.S. 366, 381, 113 S.Ct. 2130, 2140, 124 L.Ed.2d 334 (1993). Such an interpretation of the law contradicts the consistent holdings under *Terry* and this Court that each case must be decided on its own facts and that the "exigencies of the situation [must make] the search imperative." *State v. Bartram,* 925 S.W.2d 227, 229–30 (Tenn.1996); *Terry,* 392 U.S. at 30, 88 S.Ct. at 1884.

## IV

The conclusion is that because the officer had probable cause to arrest the defendant, I agree that the motion to suppress should be denied.